Please report, Brett Pertzer appearing on behalf of the petitioner Lawrence Shandola, who would like to reserve about two minutes for rebuttal. He honors the sole issue before the court as to whether Mr. Shandola's constitutional right to have a complete defense was violated at the state court level. The important facts is that the event giving rise to the charge occurred in September 1995 after the shooting of Mr. Henry. There were statements that were obtained from a variety of witnesses, two in particular. Roscoe Buffington was a statement provided by Mr. Buffington to the police. And then also two statements by Jason Graham, a youngster who happened to be in the area before the day of the shooting. Both of these individuals died before Mr. Shandola was charged, which was in January of 2001. After that point in time, during trial, defense sought to introduce the statements of Mr. Buffington and both statements of Jason Graham. Under the evidence rule 803A5, the rule, the hearsay exception to record recollection, the court allowed a portion of one of the statements of Jason Graham to be presented to the jury but denied the request for the other. Fundamentally, when you have a case, there is the right for the defense to present that evidence that allows him to present a complete defense, and respectfully, the trial court heard by denying that request. In this particular case, and it comes to the constitutional level, the court reviewed the evidence rule that applies, but then unfortunately and regrettably indicated that it was an evidentiary matter as opposed to a matter of constitutional magnitude in the sense of not allowing this testimony to be presented. Both of these individuals would have assisted and, frankly, were part of the alibi defense. Now, the State's position is that, well, Mr. Shandola had the opportunity to present his alibi defense through the statements of Rita Peck. That's true. The problem, though, is that the State, when they charged Mr. Shandola on the murder charge, charged him as either a principal or an accomplice and did that in the alternative. Material to that was the issue surrounding the vehicle that the Grahams saw down at this Livingston Metals, which is a short distance away from North Coast Electric. And significantly, the trial court allowed properly the testimony of James Graham, who was Jason's father, but would not allow in the testimony and the statements of Jason Graham when clearly the evidence rules would have allowed that testimony. The significance of that is that both Jason Graham and Roscoe Buffington, when both of those statements are considered, presented the alibi defense for Mr. Shandola because the date in question back in September of 95 dealt through a continuum of time starting from roughly about noon until the time of the shooting and then thereafter with respect to where Mr. Shandola was located. Mr. Buffington, in his statement to the detective judge, indicated that he saw Mr. Shandola at his house working on a window at about 1 o'clock in the afternoon. That presents with respect to where Mr. Shandola was at that point in time. The issue, though, is that what about the accomplice and whether or not the person who was in the vehicle that was seen by the Grahams, if, in fact, it was the same vehicle, was the accomplice involved in this case. The significance of Jason Graham's statements was that the vehicle that he saw was not the same vehicle as Mr. Shandola's vehicle. And by eliminating... Let me just ask you a question, if I may, about Mr. Buffington's statement. If he says, I saw Mr. Shandola at his house at 1, but the shooting took place late afternoon, right? Uh-huh. Was it 4 or 5? 5. 5. How long would it take to get from Mr. Shandola's house? Does the record indicate, like, how long it would take to go from the house to the shooting area?  It takes about 15 minutes for purposes of getting out of there. So how does the statement that he's there at 1, how does that bear on his alibi at the time of the shooting? Well, the way that it bears on the alibi is that that is one of the components of the alibi, is that he was at his house at the same time that this vehicle was seen down at Lillieston Meadows, which is across the street from where, or down the street from where North Coast Electric was situated. And you can't look at them, respectfully, Judge, you can't look at it just as that particular statement is solely significant, although it is indeed significant, but they need to be looked at in a combination, because with respect to the placement of Mr. Shandola, he was there at his house at 1 o'clock in the afternoon. The vehicle that was seen by the Grahams, and considering both James Graham and Jason Graham's statement, it was not the same vehicle that was seen subsequent to that when Jason Graham was taken down to the area where Mr. Shandola worked and they had an opportunity to observe the vehicle, basically unobstructed. And so that's the significance of that. So the problem is that the jury was not allowed to hear that significant exculpatory evidence, and that was indeed as a part of the alibi. Well, it's exculpatory only in a very remote sense. The jury, let's say the jury said, okay, that's not his car. That was just some other car there. We don't know why it was there. This is two or three hours before the shooting. But it's not clearly exculpatory. I mean, there's nothing that would have kept Mr. Shandola from doing the shooting, whether or not that was his car there three hours earlier. Well, that's true, but you're exactly right. But the theory that the government or that the State brought forth is that Mr. Shandola or the accomplice was scoping out the area. If you don't – and I agree with you 100% that it wouldn't absolve Mr. Shandola, but that was the theory of the State's case. But for that, the evidence of the car would have been totally irrelevant. That's the problem, is that the State, you know, sought to introduce that evidence, so be it, but, you know, under the evidence rule or the doctrine of completeness, the defense should be allowed to present all of the evidence that is exculpatory. And, indeed, that was exculpatory for purposes. Counsel, it seems to me that you're arguing to us as if we had de novo review. I mean, you're arguing from square one. How does your argument fit with the AEDPA standard? With respect to the standard of review or the prejudice? Well, yes, we aren't just looking at the rulings of the court anew just to see if we agree with them or we don't agree with them. I agree. So how does this meet the very high hurdle of review? Well, with respect on either whether it's the State or it's the defense burden, what we have to be certain is that the jury is comfortable or that the jury would have reached the same verdict with this evidence. And we can't be certain with that at all because this type of evidence undermines the belief of the jury's verdict in this particular case. The jury was not presented with the alibi evidence. It was presented with part of it, but not all of it. And respectfully, you can't suggest that, well, nonetheless, the jury would have reached the same result. They couldn't have because this was evidence that wasn't – it couldn't have come from any other source. It was unbiased evidence. Mr. Shandola testified, but there's always the suggestion that there's inherent bias by the person who's testifying. But this was – it was not evidence that was cumulative in any fashion. It was exculpatory for purposes of the defense in this particular case. And under either standard, if it's the government's burden to show that it was not harmless beyond a reasonable doubt or that the defense burden that it was substantial had a substantial injurious effect on the verdict, under both standards, respectfully, this exclusion of this evidence had that effect because it was basically based on the Court's decision in Shandola's case and also a review of the case law surrounding that particular evidence rule. It was a blanket exclusion. I may be duplicating Judge Graber's question, but what Supreme Court decision was violated, basically? Well, I think that both the – both the Chambers case was violated. I think also the Washington v. Texas case was violated. They were both evidence rules that were – that were applied. Chambers – Chambers is close, but the problem with Chambers is that the evidence that was excluded was logically totally inconsistent with guilt. In other words, somebody else did the shooting. Correct. Confessed to it. Right. And there's not that kind of a contradiction here, it seems to me. Well, respectfully, Your Honor, I disagree because there indeed would be that contradiction because in this particular case, if the defense was allowed to present that evidence, it would have established that it was some other individual that was responsible for the death because both the vehicle that was suggested to be Shandola's vehicle that was casing the joint was not his car, and also it wasn't Mr. Shandola that was there for purposes of being in the car suggesting that an accomplice was involved. And so respectfully, I would – I would urge that the – that by inference, the Chambers case does apply because the way that the courts rule on this, this blanket exclusion of this type of – of evidence based on the manner in which it was – it was obtained. So I have 10 seconds. I'm going to – unless the Court has any other additional questions, I'd like to reserve just a minute to speak with you. Thank you. Thank you. May it please the Court, my name is Paul Weiser. I'm an Assistant Attorney General for the State of Washington, representing Harold Clark in this matter. The evidence that was excluded at Mr. Shandola's trial was excluded because it was hearsay and it wasn't particularly reliable hearsay at that. The trial court's rulings regarding the evidentiary matters in this case were extraordinary evidentiary rulings that trial courts are making every day across the country. And it didn't prevent Mr. Shandola from presenting a defense, his actual alibi defense. Why wasn't Buffington's statement reliable? Your Honor, the offer of proof that was presented to the Court was here's a police  It wasn't subject to cross-examination. The State wasn't given an opportunity, for example, to ask Mr. Buffington, well, was he on a ladder or scaffolding or was he holding his keys in his left hand as he was looking at this window with the screwdriver. That was not allowed to be developed. It was just not reliable to have a police report stating something that a witness said at 1 p.m. he saw Mr. Shandola and that's it. Okay. The evidence that was excluded How about Jason's statements? Why were they not reliable? Your Honor, the actually there are two statements from One is a statement of, one is like a recorded statement, right? And the other is referred to in a police report? Is that right? That's correct, Your Honor. The September 13th, 1995, statement that Jason made was tape recorded. That was when he was in the company of his father and they were just giving an account of what they had seen, and his father, James Graham, had seen on September 11th. The September 20th statement was the statement that he made while viewing the car that was allegedly Mr. Shandola's. That was not recorded. That was reflected in a police officer's report, but it was not recorded in the same manner as the September 13th statement was. So my question is why are those not reliable? Again, those were hearsay statements, and I think we just have to rely upon the fact that the hearsay rule is about the most firmly rooted evidentiary rule in Anglo-American jurisprudence. There's a preference within United States courts and English courts for that matter for confrontation and the ability to subject a statement to cross-examination. To simply have a report come in in lieu of live testimony would violate that principle. The statements were just ordinary hearsay that was gathered by police officers all the time. I don't think that there's any inclination within Anglo-American jurisprudence to relax the evidentiary rule that the jury or the fact finder should hear from the witness and not somebody who has recorded an account of what a witness has said at some time in the past. But more particularly, these statements did not exonerate Mr. Shandola in any way. I think Mr. Graham, the senior Mr. Graham, on September 13th or September 20th, I don't recall which of his statements it was, stated that it was sometime in the afternoon of September 11th, 1995, and he was very nonspecific. When he testified via video deposition, I believe on direct examination, he stated that the time at which the two of them cited the Mercedes was sometime between 1.30 and 3.00 p.m. And then on cross-examination, and this is reflected at the excerpt of record 12.79, 12.62 is for the statement on direct examination, 12.79 he said it was simply sometime afternoon, very nonspecific about the time at which he saw the Mercedes. And Roscoe Buffington's statement about the time that he saw Mr. Shandola was at 1.00 p.m. That was about four and a half hours, four hours and 40 minutes to be exact, before the time that Mr. Henry was shot at the parking lot at North Coast Electric. And I believe counsel is correct that Mr. Shandola's house was approximately 15 minutes, eight or nine miles or so away from North Coast Electric. So it was certainly not impossible for a person to have been at his home at 1.00 p.m. or any time early in the afternoon and then shoot somebody at 5.40 p.m. in light of the fact that he was only 15 minutes away. And the evidence was just too remote to be considered alibi evidence. It was not critical. Neither Jason nor his father saw the driver of this car, and apparently Mr. Buffington didn't have any other observations of Mr. Shandola at any other time that day. And neither of them, neither Jason Graham nor Mr. Buffington, had any information about Mr. Shandola's whereabouts at the time of the crime, 5.40 p.m., which is the actual critical. The prosecution did think that there was some importance to the car that was arguably scoping out the scene because they introduced it. Did they give a complete picture of it? I believe so, Your Honor, and actually that was out of the 64 witnesses that the State presented at trial, that was as small a piece of the puzzle as there could have been. And had that even been removed from the State's evidence, I don't believe that there would have been any difference at all in the grand scheme of things. The jury would have presented precisely the same picture that they received. There's no dispute that the murderer actually drove in to the crime scene and fled on a motorcycle several hours after Jason's and Mr. Buffington's observations. And although Mr. Shandola now characterizes this as the key issue at trial, I believe he set that out at page 13 of his opening brief, the truly key issue was whether Mr. Shandola was capable of shooting and killing Mr. Henry at 5.40 p.m. and, in fact, did so. That was the issue that was presented to the jury, and his whereabouts at 12.30 or 1 p.m. or 2 p.m. on that afternoon cannot be described as the key issue or part of the alibi. And Judge Graber hit on the most important aspect of this case. Thus far we've been talking about this as though we're at de novo review, but this is subject to 28 U.S. Code Section 2254D, particularly D.1, and the deference that that statute creates. And we believe that the exclusion of the evidence in this case was neither contrary to nor an unreasonable application of the constitutional standards set out in Chambers v. Mississippi, Washington v. Texas, and the other cases following that due process line. Those cases give state courts broad latitude to exclude evidence pursuant to the state's evidentiary rules. There was nothing arbitrary or disproportionate about the exclusion of the evidence in this case. As I said, it was an ordinary exclusion of evidence pursuant to hearsay rule, which is a firmly rooted hearsay rule, about as firmly rooted as any in Anglo-American jurisprudence. And this was not particularly critical or trustworthy evidence. Washington Court's rulings in this case regarding the exclusion of Jason Graham and Roscoe Buffington's hearsay statements were neither contrary to nor an unreasonable application of clearly established federal law. Mr. Shandola received a fair trial, and we would respectfully request that the Court affirm the district court's dismissal of Mr. Shandola's habeas petition. Thank you. Thank you, counsel. Mr. Purtzer, you did use up your time, but we'll give you one minute for rebuttal if you want it. Thank you. Briefly, Judge Gould, addressing your question regarding why it's not reliable, it is reliable. In fact, that's what we expect police officers to do, is to note down precisely what individuals tell us. Anybody that deals with a motion to suppress statements, we are always advised by the prosecutor and by the judge that these statements that are written down are indeed reliable or they are a statement that's been prepared based on what the witness told them to suggest otherwise lax and incredulity. So respectfully, those statements indeed are reliable. Both of the individuals were well aware there was a murder investigation that was going on. They were questioned about Mr. Shandola. Mr. Jason Graham in particular was taken down to the vehicle to take a look at it. And contrary to the State's position, if this was not that important of evidence, then the State would not have sought to introduce all of this evidence. It was a theme within their closing argument. It was a theme throughout the case. It was either Mr. Shandola or an accomplice, and the accomplice was casing the joint in this vehicle. Respectfully, the evidence that was excluded was exculpatory evidence. It prevented Mr. Shandola from presenting a complete defense in this particular case. It could not have been substituted by anything else. And I respectfully urge the Court to grant the petition. Thank you, counsel. The case just argued is submitted for decision. And we'll move to Virginia Mason Hospital versus Washington State Nurses Association. Whenever counsel are ready, you're welcome to come up and get started.
judges: Canby, Graber, Gould